UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

VIRGIL A. STALLONE,                        )
                                           )
                Petitioner,                )
                                           )
        vs.                                )        Case No. 4:15CV1889 JCH
                                           )
IAN WALLACE,                               )
                                           )
                Respondent.                )

## MEMORANDUM AND ORDER

This matter is before the Court on Missouri State prisoner Virgil A. Stallone's *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. The matter is fully briefed and ready for disposition.

On June 9, 2011, a jury in the Circuit Court of St. Louis County, Missouri, found Petitioner guilty of two counts of first-degree statutory sodomy, two counts of first-degree child molestation, two counts of first-degree sexual misconduct, and one count of second-degree child molestation. On July 15, 2011, Petitioner was sentenced to two terms of twenty five years' imprisonment, two terms of fifteen years' imprisonment, and three terms of one year imprisonment, with all terms to run concurrently. The Missouri Court of Appeals affirmed the convictions and sentence. *State v. Stallone*, 376 S.W.3d 705 (Mo. App. 2012). Petitioner thereafter filed a motion for post-conviction relief pursuant to Missouri Supreme Court Rule 29.15, which was denied after an evidentiary hearing. The Missouri Court of Appeals affirmed the denial of post-conviction relief. *Stallone v. State*, 464 S.W.3d 279 (Mo. App. 2015).

Petitioner is currently incarcerated at the Southeast Correctional Center in Charleston,

Missouri.   As the Court construes the instant petition for writ of habeas corpus, Petitioner raises

the following twenty-five claims for relief:

(1)     That Petitioner received ineffective assistance of counsel, in that trial counsel failed to interview or present witnesses;

(2)     That Petitioner received ineffective assistance of counsel, in that trial counsel failed to oppose the State's joinder of charges;

(3)     That Petitioner received ineffective assistance of counsel, in that trial counsel failed to object to the use of the girls' testimony, signed statements and videos;

(4)     That Petitioner received ineffective assistance of counsel, in that trial counsel failed to secure documents and material from Petitioner's prior counsel;

(5)     That Petitioner received ineffective assistance of counsel, in that trial counsel failed to allow Petitioner input during jury selection;

(6)     That Petitioner received ineffective assistance of counsel, in that trial counsel failed to impeach the State's witnesses with conflicting statements they made to the police, to the CAC representative, during the preliminary hearing, or during the trial itself;

(7)     That Petitioner received ineffective assistance of counsel, in that trial counsel failed to object to the State's use of hearsay, leading questions, and perjured testimony;

(8)     That Petitioner received ineffective assistance of counsel, in that trial counsel attempted to prohibit Petitioner from testifying at trial;

(9)     That Petitioner received ineffective assistance of counsel, in that trial counsel failed to present college records demonstrating Petitioner did not meet his wife until 1996;

(10)    That Petitioner received ineffective assistance of counsel, in that trial counsel operated under a conflict of interest and encouraged Petitioner to plead guilty;

(11)    That Petitioner received ineffective assistance of counsel, in that trial counsel failed to investigate the propensity of the State's witnesses to lie;

(12)    That Petitioner received ineffective assistance of counsel, in that trial counsel failed to talk to Petitioner's previous employers regarding his

character around children;

(13) That Petitioner received ineffective assistance of counsel, in that trial counsel failed to obtain the victims' school records, or have them evaluated by an "independent psychological agency", to show they never exhibited symptoms of sexual abuse;

(14) That Petitioner received ineffective assistance of counsel, in that trial counsel failed to obtain an interpreter to allow trial counsel to speak with Petitioner's witnesses;

(15) That Petitioner received ineffective assistance of counsel, in that trial counsel failed to aid Petitioner when he complained he could not hear everything that transpired during his trial due to a hearing impairment;

(16) That Petitioner received ineffective assistance of counsel, in that trial counsel failed to assert at trial that Petitioner was coerced into writing a statement for the police;

(17) That Petitioner received ineffective assistance of counsel, in that trial counsel failed to present to the jury evidence that there was over an hour missing from the taped interrogation;

(18) That Petitioner received ineffective assistance of counsel, in that appellate counsel failed to raise the joinder issue on direct appeal;

(19) That Petitioner received ineffective assistance of counsel, in that appellate counsel failed to raise on direct appeal the fact that victim N.B. testified Petitioner did nothing to her;

(20) That the trial court erred in allowing the joinder of charges;

(21) That the trial court erred in admitting the girls' testimony and statements;

(22) That the trial court erred in admitting Petitioner's taped and signed statements;

(23) That Petitioner was denied due process of law, as his jury did not represent a fair cross-section of the St. Louis County community;

(24) That Petitioner was denied due process of law, as he was denied his right to confront and cross-examine witnesses when the prosecutor introduced hearsay testimony; and

(25) That Petitioner was denied due process of law, as the indictment was insufficient.

The Court will address the claims in turn.

## DISCUSSION

## I.    Claims Addressed on the Merits

### A.    Ground 21

As stated above, in Ground 21 of his petition Petitioner asserts that the trial court erred in admitting the girls' testimony and statements.   Petitioner raised this claim on direct appeal of his conviction.   The Missouri Court of Appeals first described the factual and procedural background of Petitioner's case as follows:

> M.B. is Defendant's[1] stepdaughter.   J.B. and N.B. are M.B.'s children and Defendant's granddaughters, who were eight and seven at the time of trial. V.R. is Defendant's sister-in-law.   The sexual offenses at issue occurred between 1995-1998, 2000-2001, and 2008-2009.
>
> On March 1, 2009, V.R. was going to a birthday party for Defendant's grandson.   Defendant came alone to pick up V.R. from her house.   While in her house, Defendant touched V.R.'s breasts and told her that he loved her.   V.R. put Defendant's hands down at his side, pushed him back, and said, "You are my sister's husband."   The following day, March 2, 2009, V.R. told her sister what had happened.   V.R. called the police and reported Defendant.   Shortly thereafter, Defendant was charged with sexual misconduct, read his Miranda rights, and transported to the police station.
>
> At the police station, Defendant signed a waiver of his Miranda rights and admitted to touching V.R.'s breasts.   He also admitted that he had fondled M.B. a few years earlier.   Defendant wrote a statement admitting that he had touched V.R.'s breasts.   Police attempted unsuccessfully to contact M.B. to investigate the incident.   In August 2009, M.B. finally spoke with police and revealed that she was sexually abused when she was growing up.   M.B. was uncertain whether she wanted to prosecute.
>
> On November 5, 2009, M.B. called police and reported that J.B. and N.B. had stated that Defendant had touched them inappropriately.   M.B. came to the station the next day and told police what the victims had reported.   On November 18, 2008 (sic), Beverly Tucker (Tucker) from the Child Advocacy Center (CAC) interviewed J.B. and N.B.   On November 19, 2009, police interviewed Defendant

---

1 Petitioner is referred to as "Defendant" by the Missouri Court of Appeals on direct appeal.

concerning the reported incidents.

On September 3, 2010, Defendant was charged by information in lieu of indictment with three counts of first-degree statutory sodomy (Counts I-III), two counts of first-degree sexual molestation (Counts IV-V), three counts of first-degree sexual misconduct (Counts VI-VIII), and one count of second-degree child molestation (Count IX) against four separate victims: M.B., V.R., J.B., and N.B. The trial court entered an order of *nolle prosequi* as to Count II and ordered that the remaining counts be renumbered accordingly. Following the close of all evidence, instructions, and argument by counsel, the jury found Defendant guilty on all counts, except Count VII. Defendant was sentenced to a total of twenty-five years' imprisonment.

(Resp. Exh. E, PP. 2-3). The Missouri Court of Appeals went on to deny Petitioner's claim as

follows:

In his first point, Defendant argues the trial court erred in admitting J.B.'s and N.B.'s out-of-court statements into evidence because the statements did not provide sufficient indicia of reliability with respect to the time, content, and circumstances of the statements and were therefore inadmissible as substantive evidence under Section 491.075. Specifically, Defendant challenges the admission of the testimony of M.B., Defendant's stepdaughter, and Tucker, an interviewer with the CAC, as to the victims' statements concerning the alleged offenses as well as the admission of State's Exhibit 4, the videotape of J.B.'s forensic interview. We disagree.

Review of the trial court's decision to admit a child's statements under Section 491.075 is for an abuse of discretion. State v. Sanders, 126 S.W.3d 5, 13 (Mo. App. W.D. 2003). Pursuant to Section 491.075:

1.    A statement made by a child under the age of fourteen relating to an offense under chapter 565, 566 or 568, RSMo, performed with or on a child by another, not otherwise admissible by statute or court rule, is admissible in evidence in criminal proceedings in the courts of this state as substantive evidence to prove the truth of the matter asserted if:
    (1) The court finds, in a hearing conducted outside the presence of the jury that the time, content and circumstances of the statement provide sufficient indicia of reliability; and
    (2) (a)    The child testifies at the proceedings;

Section 491.075.1. Missouri courts have adopted a totality of the circumstances test to determine the reliability of a child's out-of-court statements for the purposes of Section 491.075, including consideration of several non-exclusive factors: (1) spontaneity and consistent repetition; (2) the mental state of the declarant; (3) the lack of a motive to fabricate; and (4) knowledge of subject

matter unexpected of a child of similar age.   <u>State v. Sprinkle</u>, 122 S.W.3d 652, 661 (Mo. App. W.D. 2003).   The lapse of time between when the acts occurred and when the victim reported them is also a factor to consider.   <u>Id.</u>

With regard to the first factor, spontaneity and consistent repetition of the statements, Defendant argues that the victims' disclosures were in response to coercive questioning by someone "whose viewpoint was colored by antipathy toward [Defendant]."   In determining the admissibility of the statements under Section 491.075, the trial court must only rely on the testimony from the 491 hearing, and in reviewing the decision, we must do so as well.   <u>Id</u>.   Here, based on our review of the hearing transcript, the victims' disclosures to M.B. were spontaneous.   M.B. testified that N.B. mentioned the scratching on her abdomen of her own accord after it happened and without coaxing.   Similarly, M.B. testified that on a separate occasion J.B. volunteered that Defendant had touched her after M.B. and J.B.'s father had asked J.B. about a schoolmate inappropriately touching her in her private areas.   Contrary to Defendant's assertions, there is no support in the hearing transcript that M.B.'s (sic) responses were the result of leading questions or suggestion.

With regard to the second factor, the mental state of the declarant, Defendant incorrectly argues that "there was no evidence that the [victims] experienced any trauma surrounding their relationship with [him], or anything occurring around the time of the alleged acts."   At the time of her initial disclosure, N.B. complained that she suffered a scratch from her zipper when Defendant held her too tight "where she peepees from."   Moreover, nothing from the hearing transcript suggests that the victims suffered no trauma when Defendant touched them inappropriately.

Finally, with regard to the third factor, motive to fabricate, and the fourth factor, use of terminology unexpected of a child of a similar age, again nothing from the hearing transcript suggests that the victims' out-of-court statements were unreliable or unexpected given the victims' ages.

Considering the four applicable factors and the totality of the circumstances, J.B.'s and N.B.'s statements to M.B. and J.B.'s statements to Tucker in the forensic video provided sufficient indicia of reliability.   Finally, Defendant argues that he would have been acquitted on Counts II through IV without the hearsay statements.   The record proves otherwise.   We find no abuse of discretion.   Point I is denied.

(*Id.*, PP 3-5).

With respect to federal court review of state court conclusions, 28 U.S.C. § 2254 states in

pertinent part as follows:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254 (d).

Upon consideration, the Court finds the decision of the Missouri State court did not involve an unreasonable application of clearly established federal law. "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). Rather, "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id.* at 68 (citations omitted). The admissibility of evidence is a matter of state law, and thus does not form a basis for habeas relief unless the trial error infringed on a specific constitutional protection[2], or was so great as to amount to a denial of due process. *Bucklew v. Luebbers*, 436 F.3d 1010, 1018 (8th Cir.), *cert. denied*, 549 U.S. 1079 (2006).

In this case, Missouri law allows for the introduction of hearsay testimony under Mo. Rev. Stat. § 491.075.[3] The Missouri Court of Appeals evaluated the admissibility of J.B.'s and

---

2 "Rulings on the admission or exclusion of evidence in state trials rarely rise to the level of a federal constitutional violation." *Nebinger v. Ault*, 208 F.3d 695, 697 (8th Cir. 2000).
3 Missouri law allows a statement by a child under the age of fourteen, or a vulnerable person, not otherwise admissible by statute or court rule, as substantive evidence to prove the truth of the matter asserted if the court finds, in a hearing conducted outside the presence of the jury, that the time, content, and circumstances of the statement provide sufficient indicia of reliability; and the child or vulnerable person testifies at the proceedings, is unavailable as a witness; or is otherwise

N.B.'s statements to M.B. and Tucker in light of § 491.075, and found that it was not error. When viewed in consideration of all the evidence, the admission of the statements did not rise to the level of a specific constitutional violation or amount to a denial of due process. Furthermore, the admission was not outcome-determinative, in light of the testimony of the victims at trial and Petitioner's confession to the crimes charged. The Court therefore will deny habeas relief on this claim.

**B.     Ground 22**

As stated above, in Ground 22 of his petition Petitioner asserts the trial court erred in admitting Petitioner's taped and signed statements. Petitioner raised this claim on direct appeal of his conviction, and the Missouri Court of Appeals denied the claim as follows:

> In his second point, Defendant argues the trial court erred in overruling his motion to suppress and in admitting into evidence his statement to police because said statement was involuntary and induced by implied promises. We disagree.
>
> When reviewing a trial court's ruling on a motion to suppress, the inquiry is limited to whether the court's decision is supported by substantial evidence. State v. Rousan, 961 S.W.2d 831, 845 (Mo. banc 1998). Deference is given to the trial court's superior opportunity to determine the credibility of witnesses. Id. As in all matters, a reviewing court gives deference to the trial court's factual findings and credibility determinations, but reviews questions of law de novo. Id. The test for the voluntariness of a confession is whether, under the totality of the circumstances, the defendant was deprived of free choice to admit, to deny, or to refuse to answer and whether physical or psychological coercion was of such a degree that the defendant's will was overborne at the time he confessed. Id.
>
> Here, the record reflects that Defendant's statements were voluntary. While Defendant asserts that his confession to the acts with J.B. and N.B. was coerced by implied promises that he would receive counseling and treatment, the record shows that there was no express or implied promise of leniency made. State v. Simms, 131 S.W.3d 811, 814 (Mo. App. W.D. 2004) (a confession is inadmissible if it is procured by a direct or implied promise of leniency).

---

physically available as a witness but the court finds that the significant emotional or psychological trauma which would result from testifying in the personal presence of the defendant makes the child or vulnerable person unavailable as a witness at the time of the criminal proceeding. Mo. Rev. Stat. § 491.075.

Defendant was informed that he was being placed under arrest, but stated that he wanted to talk to the detectives and cooperate with the investigation. Defendant admitted that no promises had been made to him and he signed a statement expressly stating that he had not been threatened or mistreated in any fashion, nor had any gratuities been promised to him in return for making the statement. Moreover, he read that portion of the form out loud, and acknowledged that he understood it. Under the totality of the circumstances, Defendant's confession to the acts involving V.R., M.B., J.B. and N.B. was completely voluntary. Point II is denied.

(Resp.'s Exh. E, PP. 6-7).

As stated above, with respect to federal court review of state court conclusions, 28 U.S.C. § 2254 states in pertinent part as follows:

(d)     An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254 (d).

"Coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment." *Thatsaphone v. Weber*, 137 F.3d 1041, 1046 (8th Cir.) (internal quotation marks and citations omitted), *cert. denied*, 523 U.S. 1130 (1998). As noted above, the state courts concluded that Petitioner's inculpatory statements were not coerced by police activity, and on habeas review this Court "give[s] 'great weight to the considered conclusions of a coequal state judiciary.'" *Id.* at 1047 (quoting *Miller v. Fenton*, 474 U.S. 104, 112 (1985)). This conclusion, supported by the record, was not based on an unreasonable determination of the facts or an unreasonable

application of clearly established federal law.   Petitioner's claim to the contrary is without merit, and so Ground 22 must be denied.

**C.**    **Ground 1**

As stated above, in Ground 1 of his petition Petitioner asserts he received ineffective assistance of counsel, in that trial counsel failed to interview or present witnesses.   Petitioner raised this claim before the 29.15 post-conviction motion court, and the court denied the claim as follows:

> 10.    In paragraph 8(a)(1) of his Amended Motion Movant[4] alleges ineffective assistance of counsel based upon trial counsel's failure to call character witnesses.   Movant claims that as a result, he was prejudiced….
>
> 11.    To prevail on his claim of ineffective assistance of counsel for failure to call character witnesses, Movant must show that counsel failed to provide reasonably effective assistance, and Movant was thereby prejudiced.   Moore v. State, 927 S.W.2d 939, 943 (Mo. App. 1996). Absent a showing to the contrary, counsel is presumed to have provided effective assistance.   Id.   Counsel will not be found to have been ineffective for making trial strategy decisions, and the selection of witnesses is a question of trial strategy.   State v. Harris, 854 S.W.2d 853, 857 (Mo. App. E.D. 1993).   The decision not to call character witnesses in Movant's case is "virtually unchallengeable" as a matter of trial strategy.   Id.   In Harris, just as in Movant's case, the character witnesses testified at the evidentiary hearing to the defendant's character, but not directly to whether the defendant committed the charged crimes.   Id.   At the evidentiary hearing, Movant's trial counsel Kelly Hritz testified that the decision not to call the character witnesses was intentional trial strategy.
>
> Additionally, Movant must establish a reasonable probability that but for any ineffective assistance, the result of the proceeding would have been different.   Case v. State, 780 S.W.2d 681, 682 (Mo. App. S.D. 1989).   A court is required to deny post-conviction relief unless the Movant has succeeded in proving the burden that he was prejudiced by the ineffective assistance.   Frederick v. State, 754 S.W.2d 934, 936 (Mo. App. E.D. 1988).   In Frederick, the motion was denied because the evidence of appellant's guilt was "overwhelming."   The court noted, "Not

---

4 Petitioner is referred to as "Movant" by the 29.15 motion court and the Missouri Court of Appeals on appeal of the denial of his 29.15 motion.

only did the victim, appellant's adopted daughter, testify in detail to the three instances of sexual abuse, but the State produced evidence of admissions made by appellant on separate occasions to his wife, to his pastor, and to his brothers and sisters." Id. The evidence in Movant's case is even stronger than the overwhelming evidence in Frederick. In Movant's case, the victims all testified in detail about the instances of sexual abuse, and the Movant made a videotaped confession. As in Frederick, "the failure to investigate and call witnesses to testify to appellant's good character and reputation falls far short of undermining confidence in the verdict…." Id.

(Resp.'s Exh. G, PP. 79-80). Petitioner advanced the claim on appeal of the denial of his Rule

29.15 motion, and the Missouri Court of Appeals denied the claim as follows:

In his first point, Movant alleges the motion court clearly erred in denying his Rule 29.15 motion for post-conviction relief because he was denied his rights to effective assistance of counsel and due process of law in that trial counsel failed to locate, interview, endorse, subpoena, and call as witnesses Mr. Dominic V. Stallone, Mr. Vito Stallone, Ms. Giovanna Pica, Mr. Mario Pica, and Ms. Mariella Fisher, and failed to endorse and call as witnesses Ms. Anna Weiskopf, Ms. Maria Barbera, Ms. Karen Stallone, Ms. Tina Stallone, and Mr. Bartolomeo Stallone. Movant further argues he was prejudiced by trial counsel's ineffectiveness because the witnesses' testimony would have established the viable defense that Movant had a good reputation in the community for truthfulness and good moral character. Movant argues the motion court denied his motion for post-conviction relief after an evidentiary hearing although he established by a preponderance of the evidence he was denied his rights. He claims that but for trial counsel's ineffectiveness, there is a reasonable probability the trial result would have been different….

Movant's three points on appeal allege that he received ineffective assistance of counsel, both at trial and on appeal. "In order to prove that his counsel was ineffective, a movant must show that counsel's performance did not conform to the degree of skill, care, and diligence of a reasonably competent attorney and that movant was thereby prejudiced." Johnson v. State, 333 S.W.3d 459, 463 (Mo. banc 2011) (internal quotation omitted). "To demonstrate prejudice, a movant must show that, but for counsel's poor performance, there is a reasonable probability that the outcome of the court proceeding would have been different." Id. "This Court presumes that counsel acted professionally in making decisions and that any challenged action was a part of counsel's sound trial strategy." Id.

The crux of Movant's appeal lies in trial strategy decisions made by his trial counsel. "Ineffective assistance of counsel will not lie where the conduct involves the attorney's use of reasonable discretion in a matter of trial strategy,

and it is the exceptional case where a court will hold a strategic choice unsound." Barton v. State, 432 S.W.3d 741, 749 (Mo. banc 2014) (quoting State v. White, 798 S.W.2d 694, 698 (Mo. banc 1990)).

Reasonable choices of trial strategy, no matter how ill-fated they appear in hindsight, cannot serve as a basis for a claim of ineffective assistance. Anderson v. State, 196 S.W.3d 28, 33 (Mo. banc 2006). "Where counsel has investigated possible strategies, courts should rarely second-guess counsel's actual choices." Id. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable[.]" Strickland v. Washington, 466 U.S. 668, 690 (1984). "It is not ineffective assistance of counsel to pursue one reasonable trial strategy to the exclusion of another reasonable trial strategy." Anderson, 196 S.W.3d at 33.

1)     Point I:   Counsel's failure to investigate and call witnesses

Specifically, in his first point, Movant alleges trial counsel was ineffective for failing to call certain witnesses to testify about Movant's reputation for truthfulness and good moral character. Movant alleges trial counsel failed to locate, interview, endorse, subpoena, and call as witnesses Mr. Dominic V. Stallone, Mr. Vito Stallone, Ms. Giovanna Pica, Mr. Mario Pica, and Ms. Mariella Fisher, and failed to endorse and call as witnesses Ms. Anna Weiskopf, Ms. Maria Barbera, Ms. Karen Stallone, Ms. Tina Stallone, and Mr. Bartolomeo Stallone. Movant claims that, but for trial counsel's ineffectiveness, there was a reasonable probability the trial result would have been different.

To be effective, trial counsel must satisfactorily investigate his client's case. State v. Butler, 951 S.W.3d 600 (Mo. banc 1997). Counsel must make "a reasonable decision not to conduct a particular investigation." Kenley v. Armontrout, 937 F.2d 1298, 1304 (8th Cir.1991). "[S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgment supports the limitations on investigation." Strickland, 466 U.S. at 690-91. The selection of witnesses is a question of trial strategy. State v. Harris, 854 S.W.2d 853, 857 (Mo. App. E.D. 1993). A decision not to call a witness as a matter of trial strategy is virtually unchallengeable. Id. Courts have found that the failure to call character witnesses does not constitute ineffective assistance of counsel, either because the decision was one of trial strategy or the decision was not prejudicial. Id.

Where a person claims trial counsel was ineffective for failing to investigate and call witnesses, the person must establish (1) who the witnesses are; (2) what their testimony would have been; (3) whether trial counsel knew or should have known the witnesses existed; (4) that the witnesses would have testified if called; and (5) that the witnesses would have established a viable defense. State v. Harris, 870 S.W.2d 798 (Mo. banc 1994).

The motion court denied Movant's post-conviction relief on this point because trial counsel had testified she intentionally decided not to call the reputation witnesses as part of her trial strategy. Additionally, Movant did not establish that, had the witnesses testified, there is a reasonable probability the result of the proceeding would have been any different. The court further found the evidence in Movant's case was overwhelming, given that all the victims testified and Movant made a video recorded confession. The court noted that the evidence against Movant here is even stronger than the overwhelming evidence in Frederick v. State, 754 S.W.2d 934, 936 (Mo. App. E.D. 1988) (denying post-conviction relief for ineffective assistance of counsel where the evidence of appellant's guilt was "overwhelming" because the victim, appellant's adopted daughter, testified in detail to three instances of sexual abuse, and the State produced evidence of admissions made by appellant on three separate occasions to his wife, his pastor, and his brothers and sisters).

During trial, Movant testified in his own defense. He presented no other witnesses. After trial, Movant assured the court, under oath, that trial counsel had done everything he had asked. He had no complaints about her services, he was satisfied with her services, and he felt it was appropriate that the court find that counsel had done her job. At the evidentiary hearing, however, Movant said that he had lied to the court when he was asked those questions.

During the evidentiary hearing, Movant's trial counsel testified that there had been some language barriers with some of the witnesses and it had been difficult speaking with them. Trial counsel's investigator questioned nearly all of the family members whose names Movant had provided. Trial counsel testified she discussed with Movant whether it would be a good idea to call his family members as character witnesses. Trial counsel believed it would not be helpful to call them and discussed her reasons with Movant. Movant agreed that he did not want to call his family members as witnesses. Trial counsel did not believe that Movant's family members would be very persuasive as to Movant's character. Most of the family's testimony revealed that his family members could testify as to Movant's reputation within the family, not the community at large. None of the witnesses could testify directly to the issue of whether Movant committed the crimes charged. Thus, Movant did not prove that any of his proposed witnesses would have provided a viable defense. Additionally, none of the witnesses who testified at the evidentiary hearing testified that they would have been available and willing to testify at Movant's trial.

At the evidentiary hearing, Anna Weiskopf, Movant's niece, testified that she had known Movant her entire life of forty-seven years. She testified that she did not know if Movant had a reputation in the community, but within their family, she was aware of his reputation for good moral character and putting his family first. Giovanna Pica, Movant's older sister, testified that although she did not understand English very well, her brother told the truth and was very religious. Next, Movant's nephew Vito Stallone testified Movant had a reputation for

truthfulness and was a good moral person, who was always helpful. Vito Stallone testified that Movant was "always there for anyone and everyone" and showed affection, love, and concern for the family over the years. He admitted that he only knew Movant's reputation in the family community.

Additionally, Movant's nephew Mario Pica testified at the evidentiary hearing that Movant had a reputation for truthfulness because he was "honest with everybody" and had good moral character because he helped everyone that needed help. He admitted that he was not aware of Movant helping people outside of the family, but he was sure he did. When asked whether Movant's videotaped and written confessions to molesting his two granddaughters and stepdaughter would change his opinion of Movant's good moral character, Mr. Pica testified, "I'd still love him, but I'm sure it'd have some kind of effect."

Movant's sister, Maria Barbera, testified that Movant never lied to her and was ready to help every time the family needed. She said Movant was a good person, but she did not know what "reputation" meant. Movant's sister-in-law Tina Stallone testified that Movant had a good reputation for telling the truth and had good moral character. She acknowledged that a person with good moral character would not grope his wife's sister. Despite his confessions, however, she did not believe Movant did those things, she said. Maria Fisher, Movant's niece, testified that Movant had a reputation in the community for truthfulness and as a good moral person because if that is how a person is with the family, she felt like it had to extend out to others.

Movant's sister-in-law Karen Stallone testified that Movant had a reputation for being a truthful person with good moral character, at least in the family. She did not know his reputation among his own neighbors. Movant's brother Bartolomeo Stallone testified that Movant had a reputation as a truthful person and as a good moral person. Movant's son Dominic Stallone, Sr., testified that Movant had a reputation for truthfulness and that he always had taken Movant's advice to heart. Dominic Stallone, Sr., testified that Movant was "very moral" based on the fact that Movant had always been close to his family and gone to church.

Additionally, Robert Thies, an investigator for the public defender, testified that he had investigated most of Movant's family members. He spoke with about twelve of them. Although Vito Stallone told Mr. Thies that "he didn't have time for this," others wrote letters. Mr. Thies said the family members said Movant had good character and good morals.

Movant never told trial counsel where he had worked or the names of people with whom he worked. Nor did he give counsel the names of any of his neighbors. Trial counsel told Movant that it was ultimately his decision as to whether the witnesses should be called, but she did not believe that his family members would be helpful. Ultimately, Movant agreed to follow trial counsel's

advice and not call family members as character witnesses. If Movant changed his mind, trial counsel would have called the character witnesses. Movant never told trial counsel that he wanted his family members called.

Additionally, the overwhelming evidence of guilt in the case against Movant shows that even if trial counsel had called the named witnesses to testify at trial, the result of trial would not have been different. The victims testified as to the sexual abuse, and Movant made a recorded confession. As the motion court also found, similar to Frederick, "the failure to investigate and call witnesses to testify to appellant's good character and reputation falls far short of undermining confidence in the verdict…." 754 S.W.2d at 936. Even if many of Movant's relatives had testified that Movant had a reputation for truthfulness, Movant's own testimony demonstrated his willingness to lie when placed in a difficult situation. At one point, he told the court he was happy with his trial counsel's representation, but then later he said trial counsel was ineffective. At one point, Movant confessed to committing the crimes of which he was accused, but then later Movant told a different story and testified that he was not guilty. Regardless of what Movant's family testified about his reputation for truthfulness and good moral character, their testimony would not have provided Movant with a viable defense.

We find the motion court did not err in denying Movant's post-conviction relief alleging ineffective assistance of trial counsel based on trial counsel's strategic decision not to call Movant's family members. Movant agreed with that decision during trial, Movant failed to prove his family members would have been available and willing to testify, and Movant failed to prove that they would have provided a viable defense in light of Movant's recorded confessions. Movant's first point is denied.

(Resp. Exh. K, PP. 2-3, 4-10).

As noted above, with respect to federal court review of state court conclusions, 28 U.S.C.

§ 2254 states in pertinent part as follows:

(d)　　An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254 (d).

Under federal law, in order to prevail on his ineffective assistance of counsel claim, Petitioner must show that his attorney's performance was "deficient," and that the deficient performance was "prejudicial." *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. To overcome this presumption, Petitioner must prove that, "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Id.*

Even if Petitioner satisfies the performance component of the analysis, he is not entitled to relief unless he can prove sufficient prejudice. *Id.* at 694. To do so, Petitioner must prove that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

Upon consideration, the Court finds that with this claim Petitioner fails to satisfy either prong of the *Strickland* test. With respect to deficient performance, the Court notes that during the evidentiary hearing on Petitioner's post-conviction motion, Ms. Hritz testified that she instructed her investigator to speak to a number of potential witnesses, whose names were provided by Petitioner. (Resp. Exh. F, P. 131). She testified that despite any language barriers, the investigator was able to interact with the witnesses. (*Id.*, PP. 132-33). Ms. Hritz then discussed with Petitioner the possibility of putting the character witnesses on the stand at trial. (*Id.*, P. 135). Her opinion was that presenting the witnesses would not be helpful, and Petitioner agreed. (*Id.*, PP. 135-36, 139-41). The 29.15 motion court found Ms. Hritz's testimony to be

credible, and that finding was not unreasonable in light of the evidence presented in state court. Under these circumstances, this Court does not find that trial counsel's failure to call witnesses on Petitioner's behalf at trial fell outside the wide range of professionally competent assistance sanctioned by *Strickland*. *See Id.* at 690 ("strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable").

With respect to prejudice, the Court finds that under the instant facts, it cannot be said that Petitioner was prejudiced by counsel's failure to call the witnesses. Rather, as found by the post-conviction motion court and the Missouri Court of Appeals, the evidence in Petitioner's case was overwhelming, as not only did the victims testify in detail about the instances of sexual abuse, but Petitioner himself made a videotaped confession. Under these circumstances, the Missouri State courts' finding that the result of Petitioner's proceeding would likely have been the same even absent counsel's alleged error was not an unreasonable application of clearly established federal law, nor was it based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. Ground 1 of Petitioner's § 2254 petition must therefore be denied.

### D. Grounds 2 and 18

As stated above, in Ground 2 of his petition Petitioner asserts he received ineffective assistance of counsel, in that trial counsel failed to oppose the State's joinder of charges. In Ground 18, Petitioner asserts he received ineffective assistance of counsel, in that appellate counsel failed to raise the joinder issue on direct appeal. Petitioner raised these claims before the 29.15 post-conviction motion court, and the court denied the claims as follows:

> 12. Movant also claims that trial counsel was ineffective for declining to oppose the State's joining of charges against Movant and requesting a severance, and that appellate counsel was ineffective for failing to raise the joinder issue on direct appeal.

In order to show that trial counsel was ineffective for [not] opposing joinder and declining to request a severance, Movant must show that counsel's performance was deficient and that the deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). The issue is not whether counsel may have obtained severance if it were requested, but whether counsel was incompetent in failing to move for severance. Smith v. State, 628 S.W.2d 393, 395 (Mo. App. 1982). Counsel's decision not to move for severance is not ineffective assistance if it is trial strategy, and the decision is presumed to be sound trial strategy. State v. Stepter, 794 S.W.2d 649, 656 (Mo. banc 1990); Willen v. State, 648 S.W.2d 134, 136-37 (Mo. App. E.D. 1983). Movant's trial counsel, Kelly Hritz, explained that it was trial strategy not to request a severance in order to receive a not guilty on all charges instead of giving the State three attempts at a guilty verdict. Because counsel weighed the option of moving for severance, courts will not second guess that tactical decision. Id.; Smith, 628 S.W.2d at 395. Movant is also unable to show that the failure to sever prejudiced his defense. State v. Childers, 801 S.W.2d 442, 447 (Mo. App. E.D. 1990). As in Childers, the jury was instructed to consider the evidence and law applicable to each count. Nothing in the record indicates that the jury was unable to appropriately apply the evidence and law to Movant's charges. State v. Fowler, 758 S.W.2d 99, 101 (Mo. App. E.D. 1988). The Movant did not provide any evidence at the evidentiary hearing that he was prejudiced by trial counsel's strategy decision not to request severance.

Movant faces a high standard in showing that appellate counsel was ineffective. Middleton v. State, 80 S.W.3d 799, 808 (Mo. banc 2005). Ineffective assistance of appellate counsel follows the plain error rule: the issue not raised on appeal must be so substantial that it amounts to "a manifest injustice or a miscarriage of justice." Id. "[M]ovant must establish that counsel failed to raise a claim of error that was so obvious that a competent and effective lawyer would have recognized and asserted it." Tisius v. State, 183 S.W.3d 207, 215 (Mo. banc 2006). In addition, the Movant must show that he was prejudiced—that the error was so serious that it creates a reasonable probability that the outcome of the appeal would have been different. Id.

Movant cannot meet the high standard for showing ineffective assistance of appellate counsel for declining to raise the severance issue on appeal. Appellate counsel is not ineffective for declining to raise an issue where the trial court had broad discretion. Moss v. State, 10 S.W.3d 508, 515 (Mo. banc 2000). Movant's claim of ineffective assistance falls into that category, as "severance is a matter of trial court discretion whether or not requested by defense [counsel.]"

(Resp.'s Exh. G, PP. 80-1).  Petitioner advanced the claim on appeal of the denial of his Rule

29.15 motion, and the Missouri Court of Appeals denied the claim as follows:

> Second, Movant alleges the motion court clearly erred in denying his Rule
> 29.15 motion for post-conviction relief because he was denied his rights to
> effective assistance of counsel and due process of law in that trial counsel failed to
> oppose the State's joining the charges against Movant in one indictment and in
> not moving for Counts I-IV to be severed from Counts V-VIII, Count V severed
> from Counts I-IV and VI-VIII, and Counts VI-VIII severed from Counts I-IV and
> V.  Movant argues he was prejudiced because, had the court ordered three trials,
> the jurors would not have been confused by the testimony from the State's
> witness, M.B., who testified in three different roles at the same trial: an
> eyewitness, a statement witness, and a complaining witness. Movant alleges that,
> had the jurors not been confused by M.B.'s testimony, there is a reasonable
> probability the trial result would have been different.
>
> Similar to his second point, Movant alleges in his third and final point that
> the motion court clearly erred in denying his motion for post-conviction relief
> because he was denied the same rights in that appellate counsel failed to raise the
> issue on direct appeal that was so obvious from the record that a competent and
> effective lawyer would have recognized and asserted it.  Movant alleges the trial
> court plainly erred, causing manifest injustice and a miscarriage of justice, in *sua
> sponte* allowing the State to join the charges against Movant in one indictment
> and in not severing Counts I-IV from Counts V-VIII, Count V from Count I-IV
> and VI-VIII, and Counts VI-VIII from Counts I-IV and V.  Movant alleges he
> was prejudiced by appellate counsel's ineffectiveness because there was a
> reasonable probability that the Court of Appeals would have ordered separate
> trials had appellate counsel raised the issue….

2)   Points II and III:  Counsel's failure to object to joinder and failure to
attempt to sever charges

Next, Movant alleges errors with regard to trial counsel's failure to oppose the
State's joining of the charges against Movant in one indictment and not moving
for severance, and appellate counsel's similar failure to raise on direct appeal the
trial court's plain error in allowing the State to join the charges against Movant
into one indictment and not severing the counts against him.

In Movant's second point, he argues the motion court clearly erred in denying
his motion for post-conviction relief because trial counsel failed to oppose the
State when it joined the charges against him in one indictment, and because trial
counsel failed move for Counts I-IV to be severed from Counts V-VIII, Count V
severed from Counts I-IV and VI-VIII, and Counts VI-VIII severed from Counts
I-IV and V.  Movant argues he was prejudiced because, had the court ordered
three trials, the jurors would not have been confused by the testimony from the

State's witness, M.B., who testified in three different roles at the same trial: an eyewitness, a statement witness, and a complaining witness. Movant alleges that, had the jurors not been confused by M.B.'s testimony, there is a reasonable probability that the trial result would have been different.

In his third point, Movant alleges the motion court clearly erred in denying his motion for post-conviction relief because appellate counsel failed to raise the issue that the trial court plainly erred, causing manifest injustice and a miscarriage of justice, in *sua sponte* allowing the State to join the charges against Movant in one indictment and in not severing Counts I-IV from Counts V-VIII, Count V from Count I-IV and VI-VIII, and Counts VI-VIII from Counts I-IV and V. Movant alleges the (sic) he was prejudiced by appellate counsel's ineffectiveness because there was a reasonable probability that the Court of Appeals would have ordered separate trials had appellate counsel raised the issue.

Movant was charged by indictment with six counts: two counts of first-degree statutory sodomy against J.B., one count of first-degree statutory sodomy against N.B., one count of first-degree child molestation against J.B., one count of first-degree child molestation against N.B., and one count of first-degree sexual misconduct against V.R. An information in lieu of indictment subsequently added three counts: two counts of first-degree sexual misconduct against M.B. and one count of second-degree child molestation against M.B. Prior to trial, one of the first-degree statutory sodomy counts against J.B. was dismissed, and Movant went to trial on the remaining eight counts. The jury was instructed at trial that Movant was charged with a separate offense in each of the eight counts and that the counts must be considered separately. The jury found Movant guilty on seven of the eight counts and acquitted him on one count of first-degree sexual misconduct against M.B.

Movant argues the offenses with which he was charged were not of similar character because the victims were of different ages, the offenses were not closely related in time, and the offenses were not of the same type. Further, Movant pled that his counsel should have requested severance because the jurors were likely to confuse the evidence.

During the evidentiary hearing, trial counsel could not recall whether or why she did not file a motion to sever, but thought it was definitely a strategic decision. Movant's trial counsel testified that if she did not file a motion to sever the charges, it was because the evidence against Movant was extensive and she felt that one trial instead of three trials was in Movant's best interest. She believed Movant had a better chance of a more favorable verdict in one trial versus several trials. Trial counsel believed Movant had a better chance of acquittal on one or more counts if they were all tried together rather than facing several cases with the same evidence. Trial counsel observed that prior to trial, Movant was not a convicted sex offender. If he had separate trials and was convicted, his convictions would come into evidence at the later trials when

Movant testified.  She knew he was adamant about testifying.  She observed that Movant's case was not two or more cases that were joined together.

The motion court found that trial counsel made a strategic decision not to seek severance.  Additionally, there was nothing to suggest that the jury was unable to appropriately apply the evidence and law to Movant's charges.

Missouri Supreme Court Rule 23.05 states that all offenses that are of the same or similar character may be charged in the same indictment or information in separate counts.  The Revised Statutes of Missouri, Section 545.140.2, similarly provides that two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offense charged, whether felonies or misdemeanors or infractions, or any combination thereof, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan.  "Because liberal joinder is favored for the sake of judicial economy, joinder is appropriate where any of the Section 545.140.2 or Rule 23.05 criteria exist."  State v. McDonald, 321 S.W.3d 313, 318 (Mo. App. S.D. 2010) (quoting State v. Love, 293 S.W.3d 471, 475 (Mo. App. E.D. 2009)).  The tactics used in separate offenses need not be identical to constitute acts of the same or similar character.  State v. McMillon, 436 S.W.3d 663, 670 (Mo. App. E.D. 2014).  The courts consider several non-exclusive factors, including the commission of the same type of offenses, victims of the same sex and age group, offenses occurring at the same location, or offenses closely related chronologically.  Id.

Additionally, Missouri Supreme Court Rule 24.07 governs the severance of offenses.  Whenever two or more offenses are jointly charged in an indictment or information, the court shall order both or all offenses to be tried together.  Section 545.885.1.  To sever the charges, Movant would have to make a particularized showing of substantial prejudice, meaning a bias or discrimination which is actually existing or real and not one which is merely imaginary, illusory or minimal.  Section 545.885.2.  A general allegation that the jury would consider evidence of guilt on one charge as evidence of guilt on another charge does not meet the requirement of a particularized showing of substantial prejudice.  State v. Simmons, 158 S.W.3d 901, 909 (Mo. App. S.D. 2005).

Here, Movant did not prove by a preponderance of the evidence that a motion to oppose joinder or a motion to sever would have had any merit.  The charges were all of similar character in that the victims were all family members (step-children, step-grandchildren, and sister-in-law) and Movant was charged with touching the breasts of all the victims (Counts III-VI, VIII).  Although two of the charges, Counts I and II, involved touching the victim's vaginas, these were the same victims as those in Counts III and IV, and thus, it would have been against the interest of judicial economy to sever these charges and require the victims to testify in two separate trials.  The charges were also related because the

investigation of the initial charge, touching the sister-in-law's breasts, led to the discovery of the other charges, when Movant admitted during questioning that he touched M.B. M.B. later learned from her children, N.B. and J.B., that Movant had touched them inappropriately too. Thus, the charges were not improperly joined because they were similar and related. Further, Movant made no showing at the evidentiary hearing of prejudice from the lack of severance. Movant's pleading that he suffered substantial prejudice because the jurors were "at risk" of applying the evidence to each offense "without confusion" is not a showing of prejudice that is actual or existing; Movant's pleading of prejudice is speculative, imaginary, and illusory. Also, the jury was instructed to consider each charge separately and even acquitted Movant of one of the charges, demonstrating the lack of prejudice. Simmons, 158 S.W.3d at 909 n.10. There is a presumption that jurors follow the law and conscientiously carry out their duties. Strickland, 466 U.S. at 695.

Counsel will not be deemed ineffective for failing to make a non-meritorious objection. Barton v. State, 432 S.W.3d 741, 754 (Mo. 2014). Further, trial counsel made a strategic decision not to file a motion to sever because Movant was adamant about testifying at trial, and if Movant was convicted in one case, trial counsel wanted to prevent convictions from coming into evidence in later cases when Movant testified. Whether to file a motion to sever is part of a counsel's trial strategy, which will not be second-guessed on appeal. Clay v. State, 310 S.W.3d 733, 737 (Mo. App. W.D. 2010). Even where counsel does not remember whether it was a strategic decision, her testimony does not overcome the presumption that her decision was reasonable trial strategy. See Bullock v. State, 238 S.W.3d 710, 715 (Mo. App. S.D. 2007).

Furthermore, to prove ineffective assistance of appellate counsel, the movant must show 1) that the actions of his appellate counsel were outside the wide range of professionally competent assistance, 2) that counsel's errors were so severe that counsel could not be said to be functioning as the 'counsel' guaranteed to the defendant by the Sixth Amendment, and 3) that counsel's deficient performance resulted in prejudice. Franklin v. State, 24 S.W.3d 686, 691 (Mo. banc 2000), *cert. denied*, 531 U.S. 951 (2000). To support a claim of ineffective assistance regarding direct appeal counsel, there must be strong grounds showing that counsel failed to assert a claim of error which would have required reversal had it been asserted and which was so obvious from the record that a competent and effective lawyer would have recognized and asserted it. Id. Appellate counsel has no duty to present every issue asserted in a motion for new trial, nor is counsel required to raise claims based on unpreserved issues that could only be considered for plain error. Rutlin v. State, 435 S.W.3d 126, 134 (Mo. App. E.D. 2014).

Here, appellate counsel is not ineffective for failing to raise the unpreserved claims that Movant has failed to show had any merit on direct appeal. As discussed supra, the evidence shows the charges were joined properly and there was no basis for severance. Movant's second and third points are denied. The

motion court properly denied Movant's claims for ineffective assistance of trial counsel and appellate counsel based on the joinder and severance argument.

(Resp. Exh. K, PP. 3-4, 10-16).

As noted above, with respect to federal court review of state court conclusions, 28 U.S.C. § 2254 states in pertinent part as follows:

> (d)    An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
>    (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
>    (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254 (d).

## 1.    <u>Trial Counsel</u>

As noted above, in order to prevail on his ineffective assistance of counsel claim under federal law, Petitioner must show that his attorney's performance was "deficient," and that the deficient performance was "prejudicial." *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984).  Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690.  To overcome this presumption, Petitioner must prove that, "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Id.*

Even if Petitioner satisfies the performance component of the analysis, he is not entitled to relief unless he can prove sufficient prejudice. *Id.* at 694.  To do so, Petitioner must prove that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of

the proceeding would have been different." *Id.* "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

Upon consideration the Court finds that with this claim, Petitioner fails to demonstrate his counsel's performance was deficient. During the evidentiary hearing Ms. Hritz testified that if she did not file a motion to sever the charges, it was because "there was a lot of evidence against [Petitioner], and [she] did not believe that having that played over and over again was going to be beneficial." (Resp. Exh. F, P. 130). She elaborated that she believed Petitioner had a better chance of obtaining a favorable verdict in one trial versus four separate trials. (*Id.*, P. 144). Finally, she noted that although Petitioner was not a convicted sex offender prior to trial, if he had separate trials and elected to testify at each, the later juries would have been informed of any convictions in earlier trials. (*Id.*, P. 150). Under these circumstances, Petitioner's trial counsel's decision not to move to sever the charges fell well within the wide range of professionally competent assistance sanctioned by *Strickland*, and so Ground 2 of Petitioner's petition must be denied.

### 2. <u>Appellate Counsel</u>

"It is well established that the Sixth Amendment guarantees the right to effective assistance of counsel on direct appeal." *Cole v. Dormire*, 2011 WL 1258249, at *14 (E.D. Mo. Jan. 20, 2011) (citing *Evitts v. Lucey,* 469 U.S. 387, 396–97 (1985); *Douglas v. California,* 372 U.S. 353, 357–58 (1963)). "The proper standard for evaluating a claim of ineffective assistance of appellate counsel is that set forth in *Strickland, supra.*" *Id.* (citations omitted). In other words, Petitioner must show that his appellate attorney's performance fell below the reasonable standard of competence, and that there is a reasonable probability that the result would have been different absent this deficient performance. *See Strickland,* 466 U.S. at 687; *Gee v. Groose,* 110

F.3d 1346, 1352 (8th Cir. 1997).

"Appellate counsel is expected to winnow the issues on appeal to highlight the most meritorious issues and eliminate the sure losers." *Cole*, 2011 WL 1258249, at *14 (citing *Jones v. Barnes*, 463 U.S. 745, 751–52 (1983); *Gee,* 110 F.3d at 1352; *Pollard v. Delo,* 28 F.3d 887, 889 (8th Cir. 1994)). "An attorney's decision not to raise an unwinnable issue on appeal is an important strategic decision in competent appellate advocacy, and does not constitute ineffective assistance of appellate counsel." *McCord v. Norman*, 2012 WL 1080925, at *16 (E.D. Mo. Mar. 30, 2012) (citations omitted). Thus, "[i]f an issue an appellate attorney failed to raise on appeal is not meritorious, then appellate counsel cannot be considered ineffective for having failed to argue that issue on appeal." *Cole*, 2011 WL 1258249, at *14 (citations omitted).

Upon consideration the Court finds that with this claim, Petitioner fails to establish that his appellate counsel's performance was constitutionally deficient. The Court notes that had appellate counsel raised the issue of trial counsel's failure to move to sever the charges, it would have been denied, because as explained above Ms. Hritz made a strategic decision not to file the motion. Under these circumstances, Petitioner's claim of ineffective assistance of appellate counsel fails, and Ground 18 must be denied.

## II.    **Procedural Default**

"Missouri procedure requires that a claim be presented 'at each step of the judicial process' in order to avoid default." *Jolly v. Gammon*, 28 F.3d 51, 53 (8th Cir.) (quoting *Benson v. State*, 611 S.W.2d 538, 541 (Mo. App. 1980)), *cert. denied*, 513 U.S. 983 (1994). Because Petitioner failed to raise the claims stated in Grounds 3-17, 19-20, and 23-25 of the instant petition in the proper state court proceedings, he is procedurally barred from pursuing them here. *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991); *Forest v. Delo*, 52 F.3d 716, 719 (8th Cir.

1995); *Keithley v. Hopkins,* 43 F.3d 1216, 1217 (8th Cir.), *cert. denied,* 515 U.S. 1163 (1995). Therefore, this Court cannot reach the merits of the claims absent a showing of cause and prejudice, or a demonstration "that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750.

### A. Fundamental Miscarriage Of Justice

The fundamental miscarriage of justice exception "requires a habeas petitioner to present new evidence that affirmatively demonstrates that he is innocent of the crime for which he was convicted." *Abdi v. Hatch*, 450 F.3d 334, 338 (8th Cir.) (citations omitted), *cert. denied*, 549 U.S. 1036 (2006). "The requirements to establish the requisite probability of innocence are high. [Petitioner] must first come forward with 'new' evidence, and then he must show that 'it is more likely than not that no reasonable juror would have convicted him in light of the new evidence.'" *Osborne v. Purkett*, 411 F.3d 911, 920 (8th Cir. 2005) (quoting *Amrine v. Bowersox*, 238 F.3d 1023, 1029 (8th Cir.), *cert. denied*, 534 U.S. 963 (2001), and *Schlup v. Delo*, 513 U.S. 298, 327, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995)), *cert. denied*, 547 U.S. 1022 (2006).

Upon consideration, the Court finds Petitioner cannot meet this high standard. In other words, while Petitioner apparently asserts his actual innocence with respect to at least some of the alleged misconduct, he supports this claim with only his own declarations. Furthermore, Petitioner's protestations of innocence are undermined by his simultaneous claim that he confessed to the crimes at issue because he believed he would be released in order to seek treatment. As explained by the Eighth Circuit, a petitioner's "bare, conclusory assertion that he is actually innocent is not sufficient to invoke the exception," because if "'protestation of innocence [were] the only prerequisite to application of this exception, we fear that actual innocence would become a gateway forever open to habeas petitioners' defaulted claims.'"

*Weeks v. Bowersox*, 119 F.3d 1342, 1352-53 (8th Cir. 1997) (quoting *Wyldes v. Hundley*, 69 F.3d 247, 254 (8th Cir. 1995), *cert. denied*, 517 U.S. 1172 (1996)), *cert. denied*, 522 U.S. 1093 (1998).

### B.     <u>Cause And Prejudice</u>

Petitioner attempts to show cause for his failure to raise Grounds 3-17, 19-20, and 23-25 in state court, by citing to *Martinez v. Ryan*, 132 S.Ct. 1309, 182 L.Ed.2d 272 (2012). Assuming without deciding that he has demonstrated sufficient cause for the default, the Court must determine whether post-conviction counsel's deficient performance caused Petitioner "actual prejudice." *McLaughlin v. Steele*, 2016 WL 1106884, at \*9 (E.D. Mo. Mar. 22, 2016) (citing *Coleman v. Thompson*, 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991)).

> As other district courts have noted, *Coleman/Martinez* prejudice and *Strickland* prejudice may technically be two separate inquiries, but they overlap. They are—under some circumstances—redundant. At least in this case—where postconviction counsel's deficiency was his complete failure to present a substantial claim—the two types of prejudice are inexorably related: if there is a reasonable probability that the [proceeding] would have gone differently had trial counsel been constitutionally adequate, there is necessarily a reasonable probability that the state court would have so found had postconviction counsel properly presented that underlying claim.

*Id.* (internal citations and footnote omitted).

Upon consideration of the foregoing, the Court finds that in order to determine whether the alleged failings of Petitioner's 29.15 counsel caused him prejudice, it must address the underlying claims in Petitioner's petition. *See Martinez*, 132 S.Ct. at 1320 ("A finding of cause and prejudice does not entitle the prisoner to habeas relief. It merely allows a federal court to consider the merits of a claim that otherwise would have been procedurally defaulted.").

### 1.     <u>Ground 3</u>

As stated above, in Ground 3 of his petition Petitioner asserts he received ineffective assistance of counsel, in that trial counsel failed to object to the use of the girls' testimony,

signed statements and videos. Upon consideration the Court finds that with this claim, Petitioner fails to satisfy either prong of the *Strickland* standard. With respect to deficient performance, the Court notes that prior to trial Petitioner's counsel filed a motion to exclude the statements the juvenile witnesses made to law enforcement officers, CAC employees, and family members. (Resp. Exh. B, PP. 30-34). She then renewed her objection to the admission of this evidence at trial, and included the claim in her motion for a new trial. (*See* Resp. Exh. A, PP. 540, 544, 605; Resp. Exh. B., PP. 70-76). The Court finds these actions on the part of trial counsel fell well within the wide range of professionally competent assistance sanctioned by *Strickland*.

With respect to prejudice, as explained above the Missouri Court of Appeals denied Petitioner's claim that the trial court erred in admitting the girls' testimony and statements. (Resp. Exh. E, PP. 3-5). Trial counsel thus cannot be found ineffective for failing to raise a meritless claim, and so Ground 3 of Petitioner's petition must be denied.

## 2. Ground 4

As stated above, in Ground 4 of his petition Petitioner asserts he received ineffective assistance of counsel, in that trial counsel failed to secure documents and material from Petitioner's prior counsel.[5] In his reply brief, Petitioner explains the materials would have established that he did not meet his wife until 1996, thus negating M.B.'s claim he molested her in 1994, and that he was in California at the time of one of the alleged fondlings. Upon consideration the Court finds that with this claim, Petitioner again fails to satisfy either prong of the *Strickland* test. Petitioner's claim of deficient performance is belied by the record, as he testified under oath that he was satisfied with his counsel's performance, as follows:

---

[5] Petitioner testified that his original trial attorney passed away a week before trial. (Resp. Exh. F, P. 18).

The Court:   Okay.   Now, do you believe that you have had ample opportunity to discuss all--there were eight charges initially, all eight charges are on the amended--all eight charges with your lawyer?   You had ample time to discuss these charges with your lawyer?

The Defendant:   Yes.

The Court:   At all stages; correct?

The Defendant:   Yes.

The Court:   Okay.   And as discussed before, it was your decision to go to trial; correct?

The Defendant:   Yes, ma'am.

The Court:   Okay.   You discussed that with your lawyer?

The Defendant:   Yes, ma'am.

The Court:   Has your lawyer done everything you asked her to do?

The Defendant:   Yes, ma'am.

The Court:   Did she do anything you told her not to do?

The Defendant:   No, ma'am.

The Court:   *Do you believe she had all of the facts and information necessary to adequately represent and advise you on this case?*

The Defendant:   *I believe so to the best of my knowledge.*

The Court:   Do you have any complaints about her services?

The Defendant:   No, ma'am.

The Court:   Okay.   So overall are you satisfied with the services she has rendered to you?

The Defendant:   Yes, ma'am.

The Court:   Do you feel it is appropriate I make a finding that she has done her job?

The Defendant:   Yes, ma'am.

(Resp. Exh. A, PP. 927-28 (emphasis added)).   Further, with respect to prejudice, Petitioner admitted that he committed the acts alleged, thus negating any claim that the outcome of his trial would have been different absent counsel's error.   (*See* Resp. Exh. N).   Ground 4 of Petitioner's petition must therefore be denied.

### 3.   <u>Ground 5</u>

As stated above, in Ground 5 of his petition Petitioner asserts he received ineffective assistance of counsel, in that trial counsel failed to allow Petitioner input during jury selection. Petitioner does not elaborate on any alleged failures in this regard on counsel's part, nor does he identify any particular panel members he did or did not want on his jury.   The Court thus finds Petitioner has failed to demonstrate the requisite prejudice under *Strickland*, and so the claim raised in Ground 5 of the instant petition must be denied.

### 4.   <u>Grounds 6 and 7</u>

As stated above, in Ground 6 of his petition Petitioner asserts he received ineffective assistance of counsel, in that trial counsel failed to impeach the State's witnesses with conflicting statements they made to the police, to the CAC representative, during the preliminary hearing, or during the trial itself.   In Ground 7 Petitioner asserts he received ineffective assistance of counsel, in that trial counsel failed to object to the State's use of hearsay, leading questions, and perjured testimony.   With both these claims, the Court finds Petitioner fails to specify any allegedly conflicting statements, hearsay, leading questions or perjury.   Under these circumstances, he cannot demonstrate prejudice under *Strickland*, and so Grounds 6 and 7 must be denied.

### 5.   <u>Ground 8</u>

As stated above, in Ground 8 of his petition Petitioner asserts he received ineffective assistance of counsel, in that trial counsel attempted to prohibit Petitioner from testifying at trial. With this claim Petitioner fails to demonstrate the requisite prejudice, as Petitioner testified at length during his trial.   (*See* Resp. Exh. A, PP. 772-865).   Ground 8 is denied.

### 6.  Ground 9

As stated above, in Ground 9 of his petition Petitioner asserts he received ineffective assistance of counsel, in that trial counsel failed to present college records demonstrating Petitioner did not meet his wife until 1996.   According to Petitioner, these records would have proved he could not have molested M.B., his step-daughter, when she was ten, because that would have been in 1994.

Upon consideration the Court finds that with this claim, Petitioner again fails to demonstrate the requisite prejudice, for two reasons.   First, Petitioner himself testified at trial that he did not meet his wife until January of 1996 (*see* Resp. Exh. A, P. 774), so had counsel presented the college records they would merely have provided cumulative evidence.   Second, on cross-examination Petitioner acknowledged that in his written confession to the police he intentionally stated that he touched M.B.'s breast when she was ten, knowing that her age was false as he did not meet her until she was twelve.   (*See* Resp. Exh. N; Resp. Exh. A, PP. 850-51, 860).   The jury thus was in possession of this information when it engaged in deliberations, and so the Court does not find a reasonable probability that the outcome of Petitioner's trial would have been different had trial counsel presented college records demonstrating Petitioner did not meet his wife until 1996.   Ground 9 is denied.

### 7.  Ground 10

As stated above, in Ground 10 of his petition Petitioner asserts he received ineffective assistance of counsel, in that trial counsel operated under a conflict of interest and encouraged Petitioner to plead guilty. Upon consideration the Court finds that with this claim, Petitioner fails to establish either prong of the *Strickland* test. With respect to counsel's performance, the Court notes that in order to demonstrate a claim of ineffective assistance of counsel arising from a conflict of interest, Petitioner must prove both that his attorney acted under an actual conflict of interest, as opposed to just a potential one, and that the conflict of interest actually affected the adequacy of the representation. *Johnson v. Norris*, 207 F.3d 515, 519 (8th Cir. 2000). The Court's review of the record reveals that even assuming an actual conflict of interest, trial counsel's advocacy on Petitioner's behalf was vigorous both before and during trial. Second, with respect to prejudice, as revealed by the record Petitioner did not plead guilty, and he specifies no other alleged instances of prejudice suffered. Therefore, the claim raised in Ground 10 must be denied.

### 8.      Ground 11

As stated above, in Ground 11 of his petition Petitioner asserts he received ineffective assistance of counsel, in that trial counsel failed to investigate the propensity of the State's witnesses to lie. The Court finds this claim is belied by Petitioner's own testimony before the trial court, in which he expressed satisfaction with his attorney's performance and investigation. (*See* Resp. Exh. A, PP. 927-28). Petitioner thus fails to demonstrate his attorney's performance was constitutionally deficient, and so Ground 11 must be denied.

### 9.      Ground 12

As stated above, in Ground 12 of his petition Petitioner asserts he received ineffective assistance of counsel, in that trial counsel failed to talk to Petitioner's previous employers

regarding his character around children.[6]  During the evidentiary hearing on Petitioner's 29.15

motion, the investigator assigned to his case, Mr. Robert Thies, testified that the list of potential

witnesses he was instructed to contact came directly from Petitioner.  (Resp. Exh. F, P. 115).

He further testified that he attempted to contact every person on the list, with the exception of

one family member Petitioner's attorney had already contacted.  (*Id.*, P. 116).  Petitioner's trial

attorney, Ms. Kelly Hritz, confirmed that she received the names of potential witnesses from

Petitioner, and asked Mr. Thies to speak with them.  (*Id.*, P. 131).  She further testified that it

ultimately was Petitioner's decision whether or not to call the witnesses whose names he had

provided, and that he decided to follow her advice and not call the witnesses.  (*Id.*, PP. 139,

140).  With both Mr. Thies and Ms. Hritz, the discussion exclusively revolved around character

witnesses provided by Petitioner; at no time did anyone broach the subject of potential witnesses

from Petitioner's prior place of employment.[7]  Under these circumstances, the Court finds

Petitioner fails to prove he provided names of potential witnesses that his attorney refused to talk

to and/or call at trial.  Ms. Hritz cannot be found deficient for failing to contact witnesses of

whom she was unaware, and so Ground 12 of the instant petition must be denied.

### 10.   Ground 13

As stated above, in Ground 13 of his petition Petitioner asserts he received ineffective

assistance of counsel, in that trial counsel failed to obtain the victims' school records, or have the

victims evaluated by an "independent psychological agency", in order to show they never

exhibited symptoms of sexual abuse.  Upon consideration the Court finds that with this claim,

Petitioner fails to establish the requisite prejudice.  In other words, regardless of what any

---

6 Petitioner apparently was a school bus driver at some point in his career.   (*See* ECF No. 1-1, P. 2).
7  The only discussion regarding Petitioner's prior employment involved several retail shops, including Brooks
Brothers and Sam Cavato's, and Ms. Hritz testified that she did not learn of those establishments until the day of the
evidentiary hearing.  (Resp. Exh. F, PP. 137-38).

investigation into the victims' mental state may have revealed, there is no reasonable probability the outcome of Petitioner's trial would have been different, because he admitted to touching M.B., J.B. and N.B.   (*See* Resp. Exh. N).   Ground 13 is denied.

### 11.   <u>Ground 14</u>

As stated above, in Ground 14 of his petition Petitioner asserts he received ineffective assistance of counsel, in that trial counsel failed to obtain an interpreter to allow trial counsel to speak with Petitioner's witnesses.   Petitioner's trial counsel addressed this during the evidentiary hearing on his 29.15 motion, and stated that her investigator, Mr. Thies, was able to speak with almost all of the witnesses, despite the language barriers.   (Resp. Exh. F, P. 133).   For those that he did not speak with, it was either because they refused to speak with him, or they wrote letters. (*Id.*).   Under these circumstances, the Court finds Petitioner establishes neither deficient performance nor prejudice, because regardless of any language barriers trial counsel's investigator got what he needed from all witnesses.   Ground 14 is denied.

### 12.   <u>Ground 15</u>

As stated above, in Ground 15 of his petition Petitioner asserts he received ineffective assistance of counsel, in that trial counsel failed to aid Petitioner when he complained he could not hear everything that transpired during his trial due to a hearing impairment.   Upon consideration the Court again finds that with this claim, Petitioner fails to establish deficient performance on the part of his attorney.   Specifically, the Court notes the following discussion took place during a pretrial hearing:

> Ms. Hritz:   [Petitioner] is very hard of hearing so you have to speak very loud for him to hear.
>
> The Court:   Can someone address that with the jury?
>
> Ms. Hritz:   I always ask people to speak up anyway, is that what you mean?

Ms. Porter[8]:   I don't think they need to know he may be hard of hearing.

The Court:   Tell the witnesses, I mean, he needs to be able [to] hear.

Ms. Hritz:   I will make sure they speak up anyway, sometimes I can't hear.

Ms. Porter:   I brought the kids into the other courtroom last week and they were excited about the mike so they are going to talk into the mike.

The Court:   Okay.

Ms. Hritz:   I just mean, when you are questioning them about testifying or waiving the jury sentencing or whatever you are probably going to have to speak loudly, because he can't hear very well.   I don't think he always admits to when he doesn't understand what is being said.

The Court:   Right.   I just don't want him missing part of it and I don't want to draw attention to his hearing loss.   But what I will probably say is, Everyone speak up so my court reporter can take down what you say.

Ms. Hritz:   He will ask either myself or Sam if he doesn't hear.

(Resp. Exh. A, PP. 116-17).   The record thus demonstrates Petitioner's counsel was aware of the problem, and addressed it with the Court prior to trial.   Petitioner provides no specific examples of times he allegedly asked his counsel for assistance and she refused to provide it, and so he fails to demonstrate deficient performance on her part.   Ground 15 is denied.

## 13.   Ground 16

As stated above, in Ground 16 of his petition Petitioner asserts he received ineffective assistance of counsel, in that trial counsel failed to assert at trial that Petitioner was coerced into writing a statement for the police.   Once again, this claim is belied by the record.   Petitioner testified extensively during trial about his interactions with the police, and the fact that he was coerced into making a statement.   (*See, e.g.*, Resp. Exh. A, PP. 806-09). Specifically, Petitioner testified as follows:

Ms. Hritz:   Did you feel coerced into making those statements?

The Defendant:   Yes, I did.

Ms. Hritz:   How were you coerced in your perspective?

The Defendant:   In my own mind because they kept pushing.  They kept going back and forth between [M.B.] and [J.B.] and [N.B.], [J.B.] and [M.B.] and [V.R.], back and forth and just pushing the fact about [N.B.] and [J.B.] very much, very much.  And they just were pushing the buttons a little bit too much and I felt coerced and I felt intimidated and I felt uncomfortable.  So like I said just [a few] minutes ago, after four and a half, five hours of that kind of questioning back and forth, back and forth.  Any normal human being who has never been through that process before is—I know ignorance of the law is no excuse, but never had any experience of anything like that and I just did not think it would be like that.

Ms. Hritz:   So even though nobody openly threatened you with anything or openly promised you anything to make that statement you still felt pressured into making that statement?

The Defendant:   Yes, I did.

Ms. Hritz:   And that—and, obviously, again correct me if I am wrong, that's because they made you feel like they were your friends and all of a sudden that turned on you?

The Defendant:   Yes, ma'am.

(*Id.*, PP. 809-10).   The record thus demonstrates Petitioner's trial attorney asserted the claim of coercion, and so Ground 16 must be denied.

### 14.   **Ground 17**

As stated above, in Ground 17 of his petition Petitioner asserts he received ineffective assistance of counsel, in that trial counsel failed to present to the jury evidence that there was over an hour missing from the taped interrogation.   Petitioner does not elaborate on the contents of the allegedly missing portion of the tape, however, and so he fails to establish a reasonable

---

8 Ms. April Porter was the prosecuting attorney during Petitioner's trial.

probability that the outcome of his trial would have been different had counsel made the assertion.   Ground 17 is denied.

### 15.   Ground 19

As stated above, in Ground 19 of his petition Petitioner asserts he received ineffective assistance of counsel, in that appellate counsel failed to raise on direct appeal the fact that victim N.B. testified Petitioner did nothing to her.   With this claim, the Court finds Petitioner fails to demonstrate the requisite prejudice, for two reasons.   First, N.B. did testify at trial that Petitioner touched her inappropriately.   (*See* Resp. Exh. A, PP. 511-12).   Second, Petitioner himself admitted to doing so in his written confession.   (*See* Resp. Exh. N).   Under these circumstances, the Court finds no reasonable probability the result of Petitioner's trial would have been different had appellate counsel raised the claim, and so Ground 19 must be denied.

### 16.   Ground 20

As stated above, in Ground 20 of his petition Petitioner asserts the trial court erred in allowing the joinder of charges.   The Missouri Court of Appeals addressed this assertion in the midst of discussing Movant's ineffective assistance of counsel claim, holding as follows:

> Here, Movant did not prove by a preponderance of the evidence that a motion to oppose joinder or a motion to sever would have had any merit.   The charges were all of similar character in that the victims were all family members (step-children, step-grandchildren, and sister-in-law) and Movant was charged with touching the breasts of all the victims (Counts III-VI, VIII).   Although two of the charges, Counts I and II, involved touching the victim's vaginas, these were the same victims as those in Counts III and IV, and thus, it would have been against the interest of judicial economy to sever these charges and require the victims to testify in two separate trials.   The charges were also related because the investigation of the initial charge, touching the sister-in-law's breasts, led to the discovery of the other charges, when Movant admitted during questioning that he touched M.B.   M.B. later learned from her children, N.B. and J.B., that Movant had touched them inappropriately too.   Thus, the charges were not improperly joined because they were similar and related.   Further, Movant made no showing at the evidentiary hearing of prejudice from the lack of severance.   Movant's pleading that he suffered substantial prejudice because the jurors were "at risk" of

applying the evidence to each offense "without confusion" is not a showing of prejudice that is actual or existing; Movant's pleading of prejudice is speculative, imaginary, and illusory. Also, the jury was instructed to consider each charge separately and even acquitted Movant of one of the charges, demonstrating the lack of prejudice. <u>Simmons</u>, 158 S.W.3d at 909 n.10. There is a presumption that jurors follow the law and conscientiously carry out their duties. <u>Strickland</u>, 466 U.S. at 695.

(Resp. Exh. K, P. 14).

As stated above, with respect to federal court review of state court conclusions, 28 U.S.C.

§ 2254 states in pertinent part as follows:

(d)      An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254 (d).

Under Eighth Circuit law, "the decision to join offenses in a single trial is a matter within the discretion of the trial judge under both Missouri and federal law." *Robinson v. Wyrick*, 735 F.2d 1091, 1094 (8th Cir.) (citations omitted), *cert. denied*, 469 U.S. 983 (1984). The decision normally may not be disturbed on review, and so to obtain federal habeas corpus relief Petitioner must show the joinder rendered his state trial fundamentally unfair, and thus was violative of due process. *Id.* In Petitioner's case, the state court correctly noted the charges were all of similar character, in that the victims were all family members of Petitioner's. The charges were further related because the investigation of the initial charge led to the discovery of the other charges. Finally, Petitioner has made no showing that he was prejudiced by the lack of severance; rather,

the jury actually acquitted Petitioner of one of the charges, thus demonstrating its ability to distinguish between the various counts.  *Id.*  Under these circumstances the Court finds no violation of due process, and so Ground 20 must be denied.

### 17.  **Ground 23**

As stated above, in Ground 23 of his petition Petitioner asserts he was denied due process of law, as his jury did not represent a fair cross-section of the St. Louis County community. Petitioner is correct that "the American concept of the jury trial contemplates a jury drawn from a fair cross section of the community."  *Taylor v. Louisiana*, 419 U.S. 522, 527, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975).  In order to establish a violation of this fair cross-section requirement, Petitioner must show:  "'(1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.'"  *United States v. Rodriguez*, 581 F.3d 775, 790 (8th Cir. 2009) (quoting *Duren v. Missouri,* 439 U.S. 357, 364, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979)), *cert. denied*, 562 U.S. 981 (2010).

Petitioner's only support for his fair cross-section claim states as follows:  "[T]he jury was from a very small portion of St. Louis County, an area close to the courthouse, and did not include individuals selected throughout the entire county (For example, areas like Chesterfield, Ladue, etc.)."  The Court finds this allegation insufficient to establish any of the required elements under *Duren*, and so his challenge must fail.  *Rodriguez*, 581 F.3d at 790.  Ground 23 is denied.

### 18.  **Ground 24**

As stated above, in Ground 24 of his petition Petitioner asserts he was denied due process of law, as he was denied his right to confront and cross-examine witnesses when the prosecutor introduced hearsay testimony.  Petitioner's claim necessarily fails, as he does not identify which witnesses he was unable to confront and cross-examine due to the introduction of hearsay testimony.  Ground 24 is denied.

### 19. <u>Ground 25</u>

As stated above, in Ground 25 of his petition Petitioner asserts he was denied due process of law, as the indictment was insufficient.  Specifically, Petitioner claims that for Counts 1, 3, 4, and 5, the indictment included neither the specific time of the crimes, nor the address where the crimes took place.

"It is well-established that the question of whether an offense is sufficiently alleged in an indictment or information is not a proper subject for inquiry in federal habeas corpus proceedings unless the indictment or information is so defective as to deprive the state court of jurisdiction." *Wilkinson v. E.E. Haynes*, 327 F.Supp. 967, 968-69 (W.D. Mo. 1971) (citing *Knewel v. Egan*, 268 U.S. 442, 45 S.Ct. 522, 69 L.Ed. 1036 (1925)).  Under Missouri law, "[t]he fundamental test of the sufficiency of an information is whether or not it states the essential elements of the offense charged so that the defendant is adequately informed of the charge against him and the final disposition of the charge will constitute a bar to further prosecution for the same offense." *State v. Miller*, 372 S.W.3d 455, 467 (Mo. banc 2012) (internal quotation marks and citations omitted).  With respect to allegations regarding timing, "[a]ppellate courts in previous cases have held that periods of time ranging anywhere from a 24-day period to a span of four years and six months were sufficient for notice and due process purposes."  *Id.* at 466 (citations omitted).

Here, the record reveals Petitioner's information was sufficient under Missouri law, and thus did not deprive the state court of jurisdiction. Counts 1, 3, 4 and 5 of the information each identified the victim of the offense, the date range during which the offense occurred[9], the location of the act (St. Louis County), the age of the victim, *i.e.*, less than twelve or fourteen years old, the actions Petitioner took against the victim, and the Missouri offense Petitioner committed as a result of such conduct. (*See* Resp. Exh. B, PP. 35-36). This detailed information adequately informed Petitioner of the charges against him, and ensured that final disposition of the charges would preclude further prosecution for the same offenses. *Miller*, 372 S.W.3d at 467. Ground 25 is denied.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Petitioner's Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (ECF No. 1) is **DENIED**, and his claims are **DISMISSED** with prejudice. A separate Order of Dismissal will accompany this Memorandum and Order.

**IT IS FURTHER ORDERED** that because Petitioner cannot make a substantial showing of the denial of a constitutional right, the Court will not issue a certificate of appealability. See *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997), *cert. denied*, 525 U.S. 834 (1998).

Dated this 27th Day of October, 2016.

/s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE

---

9 The largest date range at issue for Counts 1, 3, 4, and 5 was just over one year, from October 7, 2008, to November 6, 2009. (Resp. Exh. B, PP. 35-36).